AMSDEN v. DUNHAM et al.

(Supreme Court, Appellate Division, Fourth Department. December 9, 1902.)

1. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—CONSTRUCTION.

　　A firm engaged in buying and selling cheese employed plaintiff under a contract to pay him a certain salary, and, in addition, a commission on the profits of the firm as long as there should be a firm and plaintiff should work for it. While plaintiff was so employed, the firm constructed a warehouse at an investment of $8,000, and on dissolution of the firm during the continuance of plaintiff's contract one of the members took the warehouse at a valuation of $14,000. *Held,* that the erection of the warehouse was not within the legitimate scope of the firm's business with regard to which plaintiff was employed, and plaintiff was not entitled to commissions on the difference between the investment and what the firm received for the warehouse on dissolution.

Appeal from trial term, Alleghany county.

Action by Orville O. Amsden against William C. Dunham, impleaded with another. From a judgment entered on a referee's report in favor of plaintiff, defendant Dunham appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WIL-
LIAMS, and HISCOCK, JJ.

Stanley C. Swift, for appellant.
W. J. Wetherbee, for respondent.


HISCOCK, J.   We think that the judgment appealed from should
be reversed.   This action was brought by plaintiff to recover for
services rendered to the defendants.   The latter were copartners and
their copartnership was formed "for the purchase and sale of cheese."
Plaintiff was to receive for his services a certain sum per month, and,
in addition thereto, a commission of 5 per cent. upon the profits
of the firm, or, as it is expressed in his evidence, "five per cent. of
the profits as long as there was a firm of Amsden & Harris and I
work for them."   The matter of these commissions was satisfactorily
adjusted for two years, but a dispute arose as to those which plain-
tiff was entitled to receive for the third year, which has given rise to
the only question which we need consider upon this appeal.   It seems
that while plaintiff was in the employ of the defendants they con-
structed a cold-storage warehouse, investing therein upwards of the
sum of $8,000.   During the final year of plaintiff's employment, con-
troversies arose between the defendants, the firm was dissolved, and
in dividing up the copartnership property the defendant Harris took
this warehouse at a valuation of $14,000 or upwards.   Plaintiff claims
that the difference between the cost of the storehouse and the price
at which Harris took it was a profit in the firm business, upon which
he was entitled to receive commissions, and the learned referee has
found in his favor upon this question.   We do not think that it was
fairly within the contemplation of the parties that a profit or increase
in valuation of such a piece of property as this should be the basis
of commissions to plaintiff.   The regular legitimate business of de-
fendants when plaintiff entered their employ, was, as stated, the pur-
chase and sale of cheese.   It is manifest that he was hired to help
about that business.   While one of the expressions above quoted
from the evidence about his receiving commissions is quite broad, his
complaint alleges his right to recover for work, labor, and services
performed for defendants "in their copartnership business," and
which was the buying and selling of cheese.   So far as the evidence
and surrounding facts disclose, that was the purpose for which he
was hired.   It does not appear that he was expected to render any
particular services with reference to such ventures as the erection
and operation of this warehouse, and it is a reasonable construction of
the contract that he should receive commissions upon the profits of
the business which received the benefit of his services.   While it is
true that this warehouse was used in connection with defendants'
business, and was deemed advantageous for the proper conduct there-
of, it can hardly be regarded as strictly and properly a part of the
business itself.   It was simply a means of carrying on the work in
which the copartnership was engaged.   It was collateral and inci-
dental to the same, rather than a part thereof.   It would be unrea-
sonable to assume that the parties contemplated that any enterprise

in which the copartners might engage, although with copartnership funds, and however remote from their natural business, should be made the basis of swelling or reducing plaintiff's commissions.  We assume that, if defendants had made profits in any one year in the purchase and sale of cheese upon which plaintiff was entitled to commissions, and such profits were entirely wiped out by some outside venture like the erection of this building, or the purchase of land, or any other form of speculation, plaintiff very strenuously would have insisted that he should not be affected by such losses.  The reverse of the illustration seems to us proper.  We do not think that the erection of the building was a part of the copartnership business which plaintiff was hired to work in, and that he is, therefore, not entitled to compensation by way of commissions upon any apparent profit in the building.

We have not overlooked the fact that the case upon appeal does not, in precise words, state that it contains all the evidence.  The parties, however, have made what they evidently regarded as a compliance with the rule upon this subject, and no question has been raised by either of them upon this point.  Under such circumstances we have deemed it proper to be governed by the manifest intention of the parties.  In accordance with these views, we think the judgment appealed from should be reversed, with costs to the appellant to abide event.

Judgment and order reversed, and new trial granted, with costs to the appellant to abide event upon questions of law only, the facts having been examined, and no error found therein.  All concur, except SPRING, J., not voting.